Brick *v.* Brick.

WILLIAM F. BRICK, appellant,

*v.*

JOSEPH M. BRICK, respondent.

At the time of making her will, the testatrix was in full mental and physical vigor and of fair business capacity. At the execution of the will, she satisfied the testamentary witnesses that she understood the transaction in which she was engaged. In view of her sentiments and the circumstances surrounding her, the will was natural, prudent and logical. The proponent, who gives a reasonable and probable explanation of his connection with the making of the will, his custody of it, and secrecy in regard to it, is of unquestioned probity of character.—*Held*, that these circumstances are sufficient to overcome any deduction or presumption of the exertion of undue influence by the proponent from the admitted facts that he procured a lawyer to draw the will, superintended its execution, took custody of it, and maintained secrecy as to its existence, coupled with testimony as to declarations and conduct on the part of the testatrix, which may be interpreted as tending to show that she was ignorant of the fact that she had made a will.

On appeal from the Burlington county orphans court.

*Mr. M. R. Sooy,* for the appellant.

*Mr. Joseph H. Gaskill,* for the respondent.

THE ORDINARY.

This is an appeal from an order and decree of the orphans court of Burlington county, dated January 3d, 1887, admitting to probate a paper purporting to be the last will and testament of Rebecca Brick. At her death, on the 10th day of August, 1885, Mrs. Brick was in the seventy-seventh year of her age. The paper in question was executed by her on the 6th day of January, 1883. She suffered from dropsy for eighteen months prior to her death, and during that time was unable to leave her house, and for a greater part of it was confined to her room. She was a woman of fair business capacity, and of sound mind, memory and understanding at the time the paper was executed.

Brick *v.* Brick.

Her husband died in 1868, leaving her with six children, five sons and one daughter, all of whom are now of full age. Of these sons, Joseph, the respondent in this appeal, became her adviser and agent in all her ordinary business affairs. He appears to have devoted himself for many years to the service of his mother, and consequently to have gained her gratitude and full confidence. In the paper offered for probate, Joseph is made the executor, specific legacies of articles of household furniture are bequeathed to the several children, the homestead, a small farm of about thirty-seven acres, with the farming implements thereon, is devised to Joseph, and he is directed to pay into the residue of the estate $6,000 for this property and the farming implements, and the residue of the estate is divided in equal shares among all Mrs. Brick's children. The share of John I. Brick, the eldest son, is directed to be paid to a trustee and to be held in trust so that the income shall be paid to John during his life, and the principal to his children after his death.

The appellant, William F. Brick, a son, resists the admission of this paper to probate as his mother's will, on the ground that the execution of it as a will was procured by the respondent by fraud or undue influence. He urges, in support of his position, the following facts, which are established by the proofs: That the will was drawn by Charles E. Merritt, a member of the bar of this state, resident at Mount Holly; that Mr. Merritt was consulted in reference to the will by the respondent only; that he requested instructions in writing, and that they were furnished to him by the respondent; that when the draft of the will was made it was either mailed or delivered to the respondent; that the respondent paid Mr. Merritt for drawing the paper; that the witnesses to the execution of the document by Mrs. Brick were called by the respondent; that the respondent was present at and superintended the execution of the paper; that he requested both the witnesses to maintain secrecy as to its existence; that he took possession of the paper after its execution, and retained it in his private safe until after his mother's death; that he kept secret the fact of the existence of a will through the mother's sickness and until after her funeral, not-

withstanding he was at times put in a position in which it would have been natural and proper for him to have spoken of it; also, that Mrs. Brick had more than once said that she did not think it would be wise for her to make a will, that the law would make a proper disposition of her property; also, that she said that although her eldest son, John, had spent all that he had received from his father's estate in a prodigal manner, and was apt to do the same with that which she would leave him, she did not wish to "entail" his share of her estate, for fear he would speak harshly of her after she was dead; and also, that shortly before her death, seemingly ignorant of the fact that she had made a will, she gave her daughter instructions as to the disposition of household effects, and signed written directions in this behalf which had been prepared by the daughter.

These circumstances, standing alone, excite grave suspicion, and demand of a court the closest judicial scrutiny, and of the proponent a clear and natural explanation. *Rusling* v. *Rusling*, *9 Stew. Eq. 603; Dale* v. *Dale, 11 Stew. Eq. 274.*

Their force, however, is weakened by a most important circumstance in favor of the validity of the will, which clearly appears in the case. It is that, at the execution of that paper, and subsequent thereto, Mrs. Brick was possessed of physical strength and of sound mind and memory and a strong will. The testamentary witnesses, who were her neighbors and acquaintances, say that they conversed with her for half an hour at the time of the execution of the paper, and that she then impressed them that she was sound in mind and understanding, and fully comprehended the business she was engaged in. And even the contestant, and his brothers and sister who testify for him, admit that when the paper was executed their mother was in full possession of her faculties. In addition to this, the proponent, who appears to be a man of most excellent character, on his oath says that it was at the request of his mother that he asked Mr. Merritt to prepare the will, and that the instructions to Mr. Merritt were entirely his mother's, and were mainly in her handwriting. He also swears that he concealed the exist-

ence of the will at his mother's urgent request, and that he never attempted in any way to control or influence his mother in the disposition of her property.

In addition to the facts that Mrs. Brick was of sound mind, and that the proponent denies any attempt upon his part to control or influence her in making her will, the provisions of the will seem to be consistent with the views that Mrs. Brick entertained as to the proper disposition of property, and, in themselves, to support the instrument. With her husband, and, after his death, alone, the testatrix had lived upon the farm devised to the proponent, for very many years. She was greatly attached to the place, and had declined all offers to part with it. The proponent lived near the farm, owned property in the neighborhood of it, was a prosperous merchant, and shared his mother's attachment to the homestead.

All conditions seem to have pointed to him as the child who would have the ability, and be the most likely to preserve the old home. It was then natural that the mother should give it to him. The assessed value of the property, for purposes of taxation, is little less than $6,000. Proximity to the village, it is true, gives the farm a greater value, if it shall ever be divided, and sold in building sites, but it is conceded that, for the purposes to which the homestead has always been devoted, for farming and as a residence, $6,000 is nearly its full value. It would have been unjust to have charged the proponent more than this value, if he was expected to retain the property as a farm. It is apparent that, if the testatrix had not resorted to some expedient similar to that which is adopted in the will, the property would, in the due settlement of the estate, have to be divided, and sold to the greatest advantage, and that upon a sale in parcels its destruction as a homestead would be inevitable.

Although the devise to the deponent was not conditioned upon the maintenance of the homestead, the coupling of the farming implements with the farm and the price charged for it are suggestive of a desire and purpose that the place shall be kept as a farm.

It was natural that Mrs. Brick should select, as the executor

of her will, the son who had always assisted her in the management of her business affairs, and who was most familiar with them.

The evidence in the case most abundantly shows that the testatrix was constantly reminded of 'the prodigal wastefulness with which her son John had dissipated his inheritance from his father, and that she recognized the propriety of withholding from him the control .of the principal of that which he should take under her will, but that she shrank from provoking him to speak harshly of her, and was thereby deterred from pursuing her plain duty in this respect. The provision of the will in reference to John may account for the injunction of the proponent to secrecy as to the existence of the document.

The circumstances relied upon by the appellant, although they arouse suspicion, and excite to a jealous examination of the proponent's proofs, are not irreconcilable with his innocence of fraud and undue influence. It was not unnatural that when Mrs. Brick desired to make a will she should consult her son Joseph, who had been her adviser in ordinary business affairs, as to the method of accomplishing her purpose, and ask his assistance at the execution of the formalities required by law, and commit to his keeping the document when it was completed. Nor was it impossible that during the long sickness which preceded her death she should have forgotten that she had distributed specific articles of her household furniture by her will, or, indeed, that she should have forgotten that she had made a will. Nor was it impossible that during her illness she sought to free herself from importunity upon the subject of a will, by proclaiming that the law would make a proper disposition of her property. It seems to me that these things are not only possible, but natural, and even probable.

I am satisfied that the paper offered for probate is the last will of Rebecca Brick, and that the circumstances which militate against the proponent were the outcome of kind attentions to his mother. The influence which is acquired by kind offices to an aged parent is not undue.

The decree of the orphans court will be affirmed.